IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

MICHELE LYNN ERIE,　　　　　　　　　)
　　　　　　　　　　　　　　　　　　　　　)
　　　　Plaintiff,　　　　　　　　　　　　)
　　　　　　　　　　　　　　　　　　　　　)
　-vs-　　　　　　　　　　　　　　　　　 )　　　Civil Action No. 15-59 ERIE
　　　　　　　　　　　　　　　　　　　　　)
CAROLYN W. COLVIN,　　　　　　　　　 )
COMMISSIONER OF SOCIAL SECURITY,　)
　　　　　　　　　　　　　　　　　　　　　)
　　　　Defendant.　　　　　　　　　　　)

AMBROSE, Senior District Judge.

**OPINION**
**and**
**ORDER OF COURT**

**SYNOPSIS**

Michele Lynn Erie ("Erie") filed an application for a period of disability and disability insurance benefits and for supplemental security income on August 3, 2011, alleging an inability to work beginning on March 25, 2011. (R. 26)[1] Erie bases her claim of disability upon, among other things, trochleitis, scleritis, rheumatoid arthritis, fibromyalgia, migraines, diabetes, degenerative disc disease, degenerative joint disease, depression, anxiety, and obesity. (R. 28) The claims were denied initially on October 5, 2011. (R. 26) Erie's subsequent request for a hearing was granted and the Administrative Law Judge ("ALJ") conducted a hearing on April 18, 2013. (R. 26) The vocational expert ("VE") then answered written interrogatories after which the ALJ then issued an unfavorable decision. (R. 26-36) The Appeals Council subsequently denied Erie's request for review. (R. 1-7) She then appealed to this Court.

Before the Court are Cross-Motions for Summary Judgment. *See* ECF Docket Nos. [8] and [11]. Both parties have filed Briefs in Support of their positions. *See* ECF Docket Nos. [9], [11 After careful consideration of the submissions of the parties, and based on my Opinion set forth below, the ALJ's decision is affirmed.

---

[1] The ALJ determined that Erie's earnings records showed that she had acquired sufficient quarters of coverage to remain insured through September 30, 2015. (R. 26)

I.  **BACKGROUND**

Erie was born in 1970, making her 40 years old at the time of the alleged disability onset date and 43 years old at the time of the hearing. (R. 35) As such, she is considered to be a "younger person" under the Commissioner's guideline. 20 C.F.R. §§ 404.1563(c); 416.963(c). She left school in the 11th grade. (R. 49) She does drive, but says that she is uncomfortable doing so given her history of panic attacks. (R. 69) Her past job experience includes working as a telemarketer and as a home health aide. (R. 74-75) Erie indicated that she left her last job in telemarketing because her eye problems made her sick and, as a result, she could not make the committed number of hours. (R. 50)

As stated above, the ALJ concluded that Erie has not been under a disability within the meaning of the Social Security Act since March 25, 2011. (R. 26) Specifically, the ALJ determined that Erie suffered from the following severe impairments: trochletis; scleritis; rheumatoid arthritis; fibromyalgia; migraine cephalgia; diabetes mellitus; thoracic degenerative disc disease; lumbar degenerative disc disease; right foot degenerative joint disease; bilateral knee degenerative joint disease; major depressive disorder; anxiety disorder; and obesity. (R. 28) Nevertheless he concluded that those impairments or combination of impairments did not meet or medically equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, 20 C.F.R. 404.1520(d), 404.1525, 404.1526, 416.920(d), 416,925 and 416.926. (R. 28-30) The ALJ further concluded that Erie had the residual functional capacity ("RFC") to perform sedentary work as defined in 20 C.F.R. §§ 404.1567(a) and 416.967(a) with certain limitations. (R. 30-35) Ultimately, the ALJ concluded that, given Erie's age, education, work experience, and residual functional capacity, there were jobs, such as an assembler, a laborer and a sorter, that existed in significant numbers in the national economy that Erie could perform. (R. 35-36) Consequently, the ALJ denied her claim.

Erie takes issue with the ALJ's assessment of the medical evidence. More specifically, Erie urges that the ALJ improperly rejected her treating physician Dr. Yohe's opinion without an

adequate basis, and without any contrary medical evidence. According to Erie, the ALJ should have afforded Yohe's opinion greater weight. Erie also contends that the ALJ failed to properly assess her credibility. I reject both contentions.

## II.     LEGAL ANALYSIS

### A)     Standard of Review

The standard of review in social security cases is whether substantial evidence exists in the record to support the Commissioner's decision. *Allen v. Bowen,* 881 F.2d 37, 39 (3d Cir. 1989). Substantial evidence has been defined as "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate." *Ventura v. Shalala,* 55 F.3d 900, 901 (3d Cir. 1995), *quoting Richardson v. Perales,* 402 U.S. 389, 401 (1971). Additionally, the Commissioner's findings of fact, if supported by substantial evidence, are conclusive. 42 U.S.C. §405(g); *Dobrowolsky v. Califano,* 606 F.2d 403, 406 (3d Cir. 1979). A district court cannot conduct a *de novo* review of the Commissioner's decision or re-weigh the evidence of record. *Palmer v. Apfel,* 995 F. Supp. 549, 552 (E.D. Pa. 1998). Where the ALJ's findings of fact are supported by substantial evidence, a court is bound by those findings, even if the court would have decided the factual inquiry differently. *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999). To determine whether a finding is supported by substantial evidence, however, the district court must review the record as a whole. *See,* 5 U.S.C. §706.

To be eligible for social security benefits, the plaintiff must demonstrate that he cannot engage in substantial gainful activity because of a medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of at least 12 months. 42 U.S.C. §423(d)(1)(A); *Brewster v. Heckler,* 786 F.2d 581, 583 (3d Cir. 1986).

The Commissioner has provided the ALJ with a five-step sequential analysis to use when evaluating the disabled status of each claimant. 20 C.F.R. §404.1520(a). The ALJ must determine: (1) whether the claimant is currently engaged in substantial gainful activity; (2) if not,

whether the claimant has a severe impairment; (3) if the claimant has a severe impairment, whether it meets or equals the criteria listed in 20 C.F.R., pt. 404, subpt. P. appx. 1; (4) if the impairment does not satisfy one of the impairment listings, whether the claimant's impairments prevent him from performing his past relevant work; and (5) if the claimant is incapable of performing his past relevant work, whether he can perform any other work which exists in the national economy, in light of his age, education, work experience and residual functional capacity. 20 C.F.R. § 404.1520. The claimant carries the initial burden of demonstrating by medical evidence that he is unable to return to his previous employment (steps 1-4). *Dobrowolsky*, 606 F.2d at 406. Once the claimant meets this burden, the burden of proof shifts to the Commissioner to show that the claimant can engage in alternative substantial gainful activity (step 5). *Id.*

A district court, after reviewing the entire record may affirm, modify, or reverse the decision with or without remand to the Commissioner for rehearing. *Podedworny v. Harris,* 745 F.2d 210, 221 (3d Cir. 1984).

**B)    Discussion**

As stated above, Erie challenges the ALJ's findings. Specifically, she disagrees with the ALJ's treatment of Dr. Yohe's opinion as well the ALJ's conclusions regarding credibility. For the reasons set forth below, I find each of Erie's challenges unpersuasive.

(1)    Dr. Yohe's Opinion

Dr. Yohe is Erie's treating psychiatrist. Erie urges that, because Yohe is the treating physician, his opinion is entitled to the greatest weight and that the ALJ failed to follow this dictate. The amount of weight accorded to medical opinions is well-established. Generally, the ALJ will give more weight to the opinion of a source who has examined the claimant than to a non-examining source. 20 C.F.R. § 416.927(c)(1) and § 404.1527(c)(1). Additionally, the ALJ generally will give more weight to opinions from a treating physician, "since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [a

claimant's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from the reports of individual examinations, such as consultative examinations or brief hospitalizations." 20 C.F.R. § 416.927(c)(2) and § 404.1527(c)(2). If the ALJ finds that "a treating source's opinion on the issue(s) of the nature and severity of [a claimant's] impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence [of] record," he must give that opinion controlling weight. *Id.* Unless a treating physician's opinion is given controlling weight, the ALJ must consider all relevant factors that tend to support or contradict any medical opinions of record, including the patient / physician relationship; the supportability of the opinion; the consistency of the opinion with the record as a whole; and the specialization of the provider at issue. 20 C.F.R. § 416.927(c)(1)-(6) and § 404.1527(c)(1)(-(6). "[T]he more consistent an opinion is with the record as a whole, the more weight [the ALJ generally] will give to that opinion." 20 C.F.R. § 416.927(c)(4). In the event of conflicting medical evidence, the Court of Appeals for the Third Circuit has explained:

> "A cardinal principle guiding disability determinations is that the ALJ accord treating physicians' reports great weight, especially 'when their opinions reflect expert judgment based on continuing observation of the patient's condition over a prolonged period of time." *Morales v. Apfel*, 225 F.3d 310, 317 (3d Cir. 2000) (*quoting Plummer v. Apfel*, 186 F.3d 422, 429 (3d Cir. 1999). However, "where … the opinion of a treating physician conflicts with that of a non-treating, non-examining physician, the ALJ may choose whom to credit" and may reject the treating physician's assessment if such rejection is based on contradictory medical evidence. *Id.* Similarly, under 20 C.F.R. § 416.927)(c)(2), the opinion of a treating physician is to be given controlling weight only when it is well-supported by medical evidence and is consistent with other evidence in the record.

*Becker v. Comm'r. of Social Sec.*, 403 Fed. Appx. 679, 686 (3d Cir. 2010). The ultimate issue of whether an individual is disabled within the meaning of the Act is for the Commissioner to decide. Thus, the ALJ is not required to afford special weight to a statement by a medical source that a claimant is "disabled" or "unable to work." *See* 20 C.F.R. § 416.927(d)(1), (3) and § 404.1527(d)(1), (3); *Dixon v. Comm'r. of Soc. Sec.*, 183 Fed. Appx. 248, 251-52 (3d Cir. 2006)

(stating, "[o]pinions on disability are not medical opinions and are not given any special significance."). Although the ALJ may choose who to credit when faced with a conflict, he "cannot reject evidence for no reason or for the wrong reason." *Diaz v. Comm'r. of Soc. Sec.*, 577 F.3d 500, 505 (3d Cir. 2009). The ALJ must provide sufficient explanation of his or her final determination to provide a reviewing court with the benefit of the factual basis underlying the ultimate disability finding. *Cotter v. Harris*, 642 F.2d 700, 705 (3d Cir. 1981). In other words, the ALJ must provide sufficient discussion to allow the court to determine whether any rejection of potentially pertinent, relevant evidence was proper. *Johnson v. Comm'r. of Soc. Sec.*, 529 F.3d 198, 203-4 (3d Cir. 2008).

As stated above, Dr. Yohe acted as Erie's treating psychiatrist. He issued a "Treating Medical Source Statement Regarding the Nature and Severity of an Individual's Mental Impairments" on March 14, 2013. (R. 766-768) Dr. Yohe remarked that Erie had no impairment regarding the ability to understand and remember or carry out short, simple instructions. (R. 766) However, he described her as being "moderately" limited in her ability to understand, remember and carry out detailed instructions as well as the ability to make judgments on simple work-related decisions. (R. 766) He similarly found that she had "moderate" limitations in her ability to interact appropriately with the public as well as to respond appropriately to changes in a routine work setting, but "marked" limitations in her ability to interact appropriately with supervisors and co-workers as well as the ability to respond appropriately to work pressures in a usual work setting. (R. 766-767) He opined that she would be off-task for 10-15 minutes per hour. Dr. Yohe further indicated that the following work-related stressors would increase the level of impairment beyond that detailed above: unruly, demanding or disagreeable customers, even on an infrequent basis; production demands or quotas; a demand for precision; a need to make quick and accurate independent decisions in problem solving on a consistent basis; and a need to make accurate, independent decisions in problem solving on a consistent basis. He also explained that Erie is the type of person for whom a routine, repetitive, simple entry-level

6

job would serve as a stressor which would exacerbate instead of mitigate psychological symptoms in the workplace and that her ability to show up to the job place or complete simple tasks 8 hours a day / 5 days a week cannot be expected due to her diagnosed mental health impairment. (R. 767) Dr. Yohe cited Erie's chronic depression and anxiety as support for his conclusions. (R. 767)

The ALJ accorded Dr. Yohe's March 14, 2013 opinion "little weight." (R. 35) The ALJ explained that Dr. Yohe's opinion was inconsistent with the treatment notes. (R. 35) I find that, contrary to Erie's assertions, the ALJ's decision not to accord Dr. Yohe's opinion controlling weight was appropriate. As the ALJ found, Dr. Yohe's opinion was not supported by his own treatment records. For instance, the records indicate that Erie's depression and anxiety was well controlled on medication. (R. 746, 748, 756, 757, 759) Additionally, as the ALJ noted, Erie's "psychiatric treatment records do not appear to indicate a formal diagnosis of panic disorder at all." (R. 34) Rather, the record suggests that Erie herself initially reported having 2-3 panic attacks over the preceding year, then, in July of 2012, indicated that she had not experienced any panic attacks since beginning the medication of Vistaril. (R. 757) Indeed, a close review of the records suggests that Erie's panic attacks resolved with medication except for a limited period of time due to the death of her horse. (R. 750, 752).

Further, the records indicated that during her treatment at Stairways, where Dr. Yohe worked and signed off on the records, Erie's thought process, judgment and insight, associations, orientation, memory and attention and concentration were all consistently described as being within normal limits. (R. 747, 749, 751-53, 756, 757, 759) The treatment notes also indicated a GAF of 55, which the ALJ noted. (R. 34, 764). This score suggests that Erie had at most moderate symptoms or functional limitations and further undercuts Yohe's indication that Erie had disabling limitations.

Thus, contrary to Erie's assertions, the ALJ did adequately explain his reasons for not according Dr. Yohe's opinion controlling weight – it was not consistent with his own treatment

7

notes or with other evidence of record. Moreover, Erie's contention that the decision rendered in this case violated the Third Circuit Court's "long held" belief that "[a]n ALJ's own medical analysis which is contrary to medical evidence, especially from treating physicians, is invalid," is incorrect. The ALJ's decision was not contrary to the medical records. As such, the ALJ's decision to give it "little weight" was wholly appropriate. The ALJ's decision is affirmed on this ground.

       (2)    Credibility Assessment

Next Erie contends that the ALJ improperly disregarded her testimony with respect to the severity of her symptoms. It is well-established that the ALJ is charged with the responsibility of determining a claimant's credibility. *See Smith v. Califano*, 637 F.2d 968, 972 (3d Cir. 1981); *Baerga v. Richardson*, 500 F.2d 309, 312 (3d Cir. 1974). Indeed, "[t]he authority to evaluate the credibility of [the claimant] concerning pain and other subjective complaints is reserved for the ALJ." *Gilmore v. Barnhart*, 356 F. Supp.2d 509, 513 (E.D. Pa. 2005) While the ALJ must give a claimant's subject complaints "serious consideration," *Powell v. Barnhart*, 437 F. Supp.2d 340, 342 (E.D. Pa. 2006), "the ALJ may reject a claimant's complaints if he does not find them credible." *Id.* Further, "if supported by substantial evidence, the ALJ's credibility findings may not be disturbed upon appeal." *Hirschfield v. Apfel*, 159 F. Supp.2de 802, 811 (E.D. Pa. 2001). In determining the credibility to give to an individual's statements, the ALJ must consider "the entire case record." *SSR 96-7p*. The ALJ's decision "must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reason for that weight." *Id.* Inconsistencies in a claimant's testimony or daily activities permit an ALJ to conclude that some or all of the claimant's testimony about his or her limitations or symptoms is less than fully credible. *See Burns v. Barnhart*, 312 F.3d 113, 129-30 (3d Cir. 2002). Generally, the ALJ is given great discretion in making credibility determinations, and I must defer to such findings

unless they are not supported by substantial evidence. *Baerga*, 500 F.2d at 312.

After careful consideration, I find that the ALJ's credibility determinations are supported by substantial evidence of record. It is clear that the ALJ engaged in an appropriate analysis of whether Erie's medically determinable impairments could reasonably be expected to cause the alleged symptoms. (R. 30-31) Indeed, the ALJ referenced her scleritis, migraines, fibromyalgia, panic attacks, rheumatoid arthritis, diabetes mellitus, and spine and sciatic nerve problems. (R. 31) The ALJ also acknowledged Erie's complaints regarding the pain associated with these conditions. (R. 31-32) The ALJ then concluded that Erie's "statements concerning the intensity, persistence, and limiting effects of these symptoms are not entirely credible…." (R. 32)

His citations to the record, and my own independent review of the same, convince me that his decision should be affirmed. For instance, as the ALJ noted, Erie's hearing testimony was inconsistent from the remainder of the documentary evidence. During the hearing she testified that she last worked as a telemarketer in March of 2011. (R. 50) Yet records indicate that in September of 2011 she told her ophthalmologist that she was working limited hours. (R. 629) Again, later, in March of 2012, Erie stated that she was working in sales. (R. 796) Similarly, Erie was inconsistent with respect to her testimony about drinking alcoholic beverages. During the hearing, Erie denied drinking. (R. 67) Yet her neurologist's notes indicate that Erie "likes an occasional beer. It is not clear whether this interferes with her medication." (R. 850) Additionally, during the hearing Erie explained Dr. DiAngi's failure to sign off on a disability form as being "because she doesn't want it to come back on her if something goes wrong." (R. 70) Yet the records suggest that Dr. DiAngi declined to sign the disability form because she felt that Erie was capable of work. She wrote in her medical records, "I do feel [Erie's] R[heumatoid] A[rthritis] and fibromyalgia *should not keep her from employment*." (R. 795) (emphasis added).

Furthermore, Erie's complaints of pain were not supported by the objective medical evidence. Erie complained of significant limitations with respect to sitting, standing and walking, but x-rays of her lumbar spine dated February 7, 2011 only showed a mild narrowing of the L5-S

disc interspace with no definite acute fracture or malalignment and mild to moderate sclerotic changes. (R. 482) A May, 2011 MRI showed only mild degenerative changes and x-rays of her lumbar spine performed in June of 2012 showed only mild facet joint degenerative changes at Ls-S1. (R. 512, 906) Further, Erie showed no lower extremity weakness and had a negative straight leg testing on June 9, 2012. (R. 907) Her gait and station exhibited as normal during an exam and she displayed normal strength and muscle tone in her back and lower extremities. (R. 934) Significantly, as stated above, Dr. DiAngi stated that Erie's rheumatoid arthritis and fibromyalgia were not a bar to employment, and her ophthalmologists never indicated that her scleritis and trochletis imposed any work-related limitations. (R. 612-96, 815-48) Further, as set forth above, Erie's claims as to her mental impairments are not borne out by the record.

A reviewing court should "ordinarily defer to an ALJ's credibility determination because he or she has the opportunity at a hearing to assess the witness's demeanor." *Reefer v. Barnhart*, 326 F.3d 376, 380 (3d Cir. 2003). After careful review, I find that there is no basis before me upon which to challenge the ALJ's credibility determinations.

### III.    CONCLUSION

After a thorough review of the record and careful consideration of Erie's arguments, I find that the decision rendered below is supported by substantial evidence of record. Accordingly, the decision is affirmed.

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

MICHELE LYNN ERIE, )
 )
      Plaintiff, )
 )
-vs- ) Civil Action No. 15-59 ERIE
 )
CAROLYN W. COLVIN, )
COMMISSIONER OF SOCIAL SECURITY, )
 )
      Defendant. )

AMBROSE, Senior District Judge.

## **ORDER OF COURT**

Therefore, this 10th day of November, 2015, it is ORDERED that the Plaintiff's Motion for Summary Judgment (Docket No. 8) is denied and the Defendant's Motion for Summary Judgment (Docket No. 11) is GRANTED.

It is further ordered that the decision of the Commissioner of Social Security is hereby affirmed.

                          BY THE COURT:
                          <u>/s/ Donetta W. Ambrose</u>
                          Donetta W. Ambrose
                          United States Senior District Judge